AMIR NASSIHI (SBN 235936)
anassihi@shb.com
RODRIGO E. SALAS (SBN 194462)
rsalas@shb.com
SHOOK, HARDY & BACON L.L.P.
555 Mission Street, Suite 2300
San Francisco, CA 94105
Tel: (415) 544-1900 | Fax: (415) 391-0281

Attorneys for Defendants
Nissan North America, Inc.

UNITED STATES DISTRICT COURT

EASTER DISTRICT OF CALIFORNIA

| | |
|---|---|
| RHONDA J. MCFADDEN, an individual,<br><br>　　　　Plaintiff,<br><br>　　vs.<br><br>NISSAN NORTH AMERICA, INC, a Delaware Corporation, and DOES 1 through 10, inclusive,<br><br>　　　　Defendant. | Case No.: 2:23-at-00537<br><br>**DEFENDANT NISSAN NORTH AMERICA, INC.'S NOTICE OF REMOVAL**<br><br>Complaint Filed: 4/4/2023 |

TO THE CLERK OF THE ABOVE ENTITLED COURT:

PLEASE TAKE NOTICE THAT Defendant Nissan North America, Inc., removes this action to this Court, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, the claims pending as Case No. 34-2023-00337385-CU-BC-GDS in the Superior Court of California, County of Sacramento.

## I. Nature of the Removed Case.

1. Plaintiff Rhonda J. McFadden ("Plaintiff") filed this civil action against Nissan in the Superior Court of California, County of Sacramento, on April 4, 2023. A true and correct copy of the Summons and Complaint is attached as Exhibit A to the declaration of Rodrigo E. Salas. Salas Decl., ¶¶ 2–3. Plaintiff served the Complaint on Nissan on April 7, 2023. *Id*., ¶ 4.

2. Plaintiff asserts four causes of action, including claims under the Song-Beverly Consumer Warranty Act for breach of express warranty and breach of the implied warranty of merchantability, as well as a fraudulent inducement – concealment cause of action. *See* Compl. (Exh. A to Salas Decl.). Nissan denies these allegations.

3. Plaintiff seeks actual damages plus a civil penalty equaling twice the amount of actual damages pursuant to Civil Code sections 1793.2(d) and 1794(c) or (e). *See, e.g.*, Compl. (Exh. A to Salas Decl.), ¶¶ 96, 123, and Prayer for Relief, ¶ 5. Plaintiff also seeks punitive damages. *See* Prayer for Relief, ¶ 6.

4. On May 8, 2023, Nissan timely filed an Answer to Plaintiff's Complaint in the state action, a true and correct copy of which is attached as Exhibit B to the declaration of Rodrigo Salas. Salas Decl., ¶¶ 5–6.

## II. Nissan Has Satisfied the Procedural Requirements for Removal.

5. Generally, a notice of removal shall be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy of the initial pleading. *See* 28 U.S.C. § 1446(b).

6. Plaintiff served the initial pleading, and Nissan received it, on April 7, 2023. Salas Decl., ¶ 4. The Complaint is silent as to actual amount in controversy. *Id.* at ¶ 12.

7. Nissan filed this Notice of Removal on June 7, 2023, within "30 days after receipt by the defendant, through service or otherwise, of a … paper from which it may first be ascertained that the case is one which is or has become removable." *See* 28 U.S.C. § 1446(b)(3); *see also* Salas Decl., ¶7. This Notice of Removal is therefore timely filed.

8. Nissan obtained the Retail Installment Sales Contract, the sales agreement concerning the subject vehicle, on May 8, 2023. Salas Decl., ¶ 7. The vehicle sales contract demonstrated that the amount in controversy meets, if not exceeds, the amount-in-controversy threshold under 28 U.S.C. § 1332(a). *Id.* at ¶¶ 14–18.

9. Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, and orders served upon Nissan in the state action are contained in Exhibits A and B to the Salas Declaration.

10. This Court is the proper venue for removal under 28 U.S.C. § 1446(a) because it is "the district and division embracing the place where such action is pending," namely Sacramento County.

11. Pursuant to 28 U.S.C. § 1446(d), written notice of this removal will be filed with the Clerk of the Superior Court of California, County of Sacramento, and Nissan will serve a copy of this Notice of Removal on all parties to the state action.

**III. Removal Is Proper Because This Court Has Subject Matter Jurisdiction Pursuant to 28 U.S.C. §§ 1332 and 1441.**

12. This Court has subject matter jurisdiction because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states. 28 U.S.C. § 1332(a).

**A.   Diversity of citizenship exists between the parties.**

13.  Removal under 28 U.S.C. § 1441(b) is appropriate because complete diversity of citizenship exists between Plaintiff and Nissan.

14.  Plaintiff is a citizen of California and resident of Sacramento County, California. Compl. (Exh. A to Salas Decl.), ¶ 2. For purposes of removal based on diversity of citizenship, a plaintiff's state of residence is presumptively considered to be their state of citizenship. *See Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see also Anderson v. Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary.").

15.  At the time Plaintiff commenced this action, Nissan was (and still is) a Delaware corporation with its principal place of business in Tennessee and, thus, for jurisdictional purposes, is a citizen of those two states. *See* Salas Decl., ¶10; 28 U.S.C. § 1332(c)(1); *see* Compl. (Exh. A to Salas Decl.), ¶ 3.

16.  This Court therefore has original jurisdiction of this action under 28 U.S.C. § 1332 because the sole named defendant is a citizen of Delaware and Tennessee, while Plaintiff is a citizen of California.

**B.   The amount-in-controversy requirement is satisfied.**

17.  The amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

18.  For purposes of Title 28 U.S.C. § 1446(b)(3), "other paper" includes "information relating to the amount in controversy in the record of the State proceeding or in responses to discovery." 28 U.S.C. § 1446(c)(3)(A); *see, e.g., Bea v. Encompass Ins. Co.,* No. CV-13-00008-JLQ, 2013 WL 1747910, *6–7 (N.D. Cal. April 23, 2013) (The term "other paper" includes written discovery responses, settlement offers, demand letters, deposition testimony, and correspondence between counsel."); and *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (A defendant may utilize a settlement demand to establish the amount in controversy). Here, the sales contract constitutes "other paper" and is the source from which Nissan

determined that this matter is removable.

19. To determine the amount in controversy, a district court should first "consider whether it is 'facially apparent' from the complaint that the jurisdictional amount is in controversy," *i.e.*, that the amount exceeds the threshold. *Abrego v. Dow Chem. Co.,* 443 F.3d 676, 690 (9th Cir. 2006) (citation omitted). If that is not facially apparent, the court then considers whether the notice of removal plausibly alleges that the amount exceeds the threshold. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87–88 (2014). Plausible allegations alone may be sufficient; evidence is required only if the plaintiff contests, or the court questions, the plausibility of the defendant's allegations. *Id*. at 89, 95; *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019). If the defendant's allegations are challenged, then "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin*, 574 U.S. at 87–88.

20. For purposes of determining the amount in controversy, "a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp*., 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).

21. A defendant's showing may rely on reasonable assumptions when estimating the amount in controversy. *Arias*, 936 F.3d at 922. It does not "need to prove to a legal certainty that the amount in controversy requirement has been met." *Dart Cherokee Basin*, 574 U.S. at 88–89 (citing H.R. Rep. No. 112-10 at p. 16 (2011)). The standard is preponderance of the evidence. Where a defendant shows that damages would exceed the threshold, "it then becomes plaintiff's burden to show, as a matter of law, that it is certain he will not recover the jurisdictional amount." *Canesco v. Ford Motor Co.*, No., 570 F. Supp. 3d 872, 888 (S.D. Cal. 2021) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

22. Here, it is not "facially apparent" that the amount in controversy exceeds $75,000, in that Plaintiff does not expressly allege she seeks more than that amount. On the Civil Case Cover Sheet, Plaintiff indicated, however, that, the "[a]mount demanded exceeds $25,000." *See* Civil Cover Sheet (Exh. A to Salas Decl.). But it is easy to show that in fact the amount in controversy will significantly exceed $75,000.

23. Plaintiff seeks restitution, diminution in value, consequential and incidental damages, civil penalties "in the amount of two times Plaintiff's actual damages," reasonable attorney's fees, prejudgment interest, and such other relief as the Court may deem proper. Compl. (Exh. A to Salas Decl) at Prayer for Relief. Plaintiff also seeks punitive damages. *Id*; Civil Cover Sheet (Exh. A to Salas Decl.), Remedies Sought (checking the punitive damages box).

24. Under the Song-Beverly Act, restitution is "the amount equal to the actual price paid or payable by the buyer … and including any collateral charges such as sales or use tax, license fees, registration fees, and other official fees, plus any incidental and consequential damages to which the buyer is entitled under Section 1794, including but not limited to, reasonable repair, towing, and rental car costs actually incurred by the buyer." Cal. Civ. Code § 1793.2(d)(2)(B); Cal. Civ. Code § 1794(b).

25. Plaintiff alleges that on or about April 16, 2021, she bought a 2021 Nissan Kicks, VIN 3N1CP5BV4ML476553. *See* Complaint (Exh. A), ¶ 11.

26. The sales contract obtained by Nissan on May 8, 2023 shows Plaintiff agreed to pay $37,705.84 for the 2021 Nissan Kicks. *See* Salas Decl., ¶¶ 11–12. The sales contract identifies Plaintiff as the buyer, and the Subject Vehicle by VIN. *Id*. Thus, Plaintiff is seeking restitution of at least $37,705.84. *Id*. This figure, pursuant to

1  Plaintiff's own allegations, represents the actual price paid or payable[1] under Cal. Civ.
2  Code § 1793.2(d)(2)(B); *see also Bui v. Mercedes-Benz USA, LLC*, No.: 20-CV-1530-
3  CAB-WVG, 2020 WL 12688081 at *2 (S.D. Cal. Sept. 30, 2020) (the amount in
4  controversy includes all amounts paid and payable, including the downpayment,
5  finance charges and interest).

6      27.    Civil penalties under the Song-Beverly Act are properly included in the
7  amount-in-controversy calculation. *See Canesco*, 570 F. Supp. 3d at 902–03
8  (collecting cases); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009
9  (N.D. Cal. 2002); *see also Zeto v. BMW NA*, No. 20-cv-1380-GPC-KSC, 2020 WL
10 6708061, at *4 (S.D. Cal. Nov. 16, 2020) ("[C]ivil penalties are not speculative and
11 should be included…. While courts may need to be wary of punitive damages
12 inflating the amount in controversy as a general concern, not much scrutiny is needed
13 when the Song-Beverly Act expressly states the contours of the damages, and Plaintiff
14 requests that amount.")

15      28.    The Song-Beverly Act allows a civil penalty of up to twice the amount of
16 actual damages. Cal. Civ. Code § 1794(c). Plaintiff seeks the maximum possible
17 amount. *See, e.g.*, Compl. (Exh. A), at ¶¶ 96, 123 and Prayer for Relief at ¶ 5. That
18 maximum amount is therefore properly included in the amount in controversy. *See*
19 *Ghebrendrias v. FCA US LLC*, No. 2:21-CV-06492 (VAP), 2021 WL 5003352, at *2
20 (C.D. Cal. Oct. 28, 2021) (holding plaintiff's civil penalty allegations sufficient to
21 include maximum civil penalties in amount in controversy); *Park v. Jaguar Land*
22 *Rover N. Am., LLC*, No. 3:20-cv-00242-BAS-MSB, 2020 WL 3567275, at *6 (S.D.
23 Cal. July 1, 2020) (holding "Defendant's assumption that the amount in controversy

---

[1] Because the measure of recovery is defined by law as "paid and *payable*," the total amount of the "paid and payable" may be awarded on the verdict form as part of actual damages, and Nissan is potentially responsible for the entire amount regardless of whether Plaintiff borrowed some of it from a family member, used their credit card, or secured a loan from a third party. Accordingly, the entire amount is in controversy.

includes the maximum amount of civil penalties is reasonable" because "this assumption is founded on the allegations of the Complaint.").

29.  A defendant may base its estimate on reasonable assumptions (*Arias*, 936 F.3d at 927) and need not prove that it will be subject to civil penalties. *See, e.g. Canseco*, 2021 WL 5122231, at *19 (siding with "the majority of courts and more recent cases" that "find civil penalties appropriate for inclusion in the calculation of the amount in controversy without the defendant needing to 'prove a case against itself' with respect to liability for civil penalties."); *Treuhaft v. Mercedes-Benz USA, LLC*, No. 2:20-cv-11155-SVW, 2021 WL 2864877, *2 (C.D. Cal. July 6, 2021) (holding civil penalty claim of twice actual damages requires including that amount regardless of whether defendant presented evidence); *Rahman v. FCA US LLC*, No. 2:21-cv-02584-SB, 2021 WL 2285102, at *2–3 (C.D. Cal. June 4, 2021) ("Defendant is not required to prove the case against itself"); *Brooks v. Ford Motor Co.*, No. CV 20-302 DSF (KKx), 2020 WL 2731830, at *2 (C.D. Cal. May 26, 2020) ("It would be absurd to suggest a defendant must offer evidence showing it willfully failed to comply with the Song-Beverly Act").

30.  If Plaintiff were to prevail on her Song-Beverly Act claims, she could be awarded well over $75,000. Plaintiff alleges actual damages of at least $37,705.84 (the total sale price of her vehicle), and could be awarded up to twice that amount in civil penalties, for a total amount in controversy of $113,117.52 ($37,705.84 + (2)x $37,705.84 = $113,117.52). Adding to this any award of incidental damages (such as Plaintiff's claim for registration fees and insurance costs) and consequential damages, reasonable attorney's fees and other remedies under the Song-Beverly Act, the amount in controversy in this case is well over the $75,000 threshold. *See* Salas Decl., ¶ 16.

31.  The Song-Beverly Act also allows for the recovery of attorney's fees. Cal. Civ. Code § 1794(d). Accordingly, the amount in controversy also includes reasonable estimates of past, present, and future attorney's fees. *Fritsch v. Swift Transp. Co. of Arizona, LLC*, 899 F.3d 785, 794 (9th Cir. 2018) ("a court *must* include

future attorneys' fees recoverable by statute or contract when assessing whether the amount-in-controversy requirement is met.") (emphasis added). Attorneys' fees would also likely be significant if Plaintiff prevailed.

32. In similar automotive warranty cases handled by Plaintiff's attorney Kevin Y. Jacobson since 2019,[2] he and/or his firm have been awarded, based on publicly available information, attorney's fees and costs that range from $23,220.55 to $80,906.47. *See, e.g., Flores, et al., v. FCA US LLC*, Case No. 1:17- cv-0427 – JLT (E.D. Cal, November 21, 2019)(seeking $82,109.78 and awarded $23,220.55).

33. Adding even the lowest range of attorney's fees previously awarded to Plaintiff's counsel—$23,220.55—to the amount of actual damages and civil penalties (excluding potential reductions)—$ 113,117.52—reveals a total of $136,338.07which easily exceeds the $75,000 threshold. *See* Sales Decl., ¶ 16; *see also Treuhaft*, 2021 WL 2864877, *2 (holding defendant properly relied on evidence from plaintiff's counsel's fee applications submitted in similar litigation, and noting plaintiff's failure to present evidence suggesting a smaller award was likely).

34. Based on Plaintiff's allegations, which Nissan disputes, punitive damages would be available. *See* Compl. (Exh. A to Salas Decl.), ¶¶ 124–142 (fraudulent inducement cause of action). Plaintiff also expressly seeks punitive damages. Civil Cover Sheet (Exh. A to Salas Decl.), Remedies Sought; Prayer for Relief. "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice," California law permits punitive damages. Cal. Civ. Code § 3294. Plaintiff's fourth cause of action is an action not arising from contract, which makes punitive damages available in this instance. "It is well established that punitive damages are part of the amount in controversy in a civil action." *Gibson v. Chrysler*

---

[2] Mr. Kevin Jacobson previously worked at Hackler Daghighian Martino and Novak.

*Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) (citing *Bell v. Preferred Life Assur. Soc'y*, 320 U.S. 238, 240 (1943); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982)). Punitive damages at stake may be established by citing a case alleging violation of the same (or similar) statute in which punitive damages were awarded based on the punitive-compensatory damages ratio. *See Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772–73 (9th Cir. 2020). That ratio can be shown without traditional "evidence," and citation to precedent upholding a specific ratio is sufficient. *Id.*

35. The amount in controversy includes all amounts "'at stake' in the litigation, whatever the likelihood that [Plaintiff] will actually recover them." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018). Here, excluding potential reductions Nissan may be able to achieve through its defenses, at least $75,411.68 in punitive damages (a conservative estimate) is at stake. $104,000.00 in punitive damages would be slightly less than a 2:1 multiple of the estimated actual damages (*i.e.*, unreduced purchase price), not accounting for incidental and consequential damages ($37,705.84 x 2 = $75,411.68). Notably, in at least a handful of similar cases, courts have awarded punitive damages based on comparable punitive-compensatory damages ratios. *See In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Lit.*, No. MDL 2672 CRB (JSC), 2019 WL 670608, at *2, 7–8 (N.D. Cal. Feb. 19, 2019) (at least $50,000 in punitive damages at stake in 33 MDL member cases, some of which included a claim for violation of the CLRA, permitting up to a ~5:1 ratio of punitive-compensatory damages ratio); *Johnson v. Ford Motor Co.*, 135 Cal. App. 4th 137, 150 (2005) (on remand, affirming punitive damages award of $175,000, just less than a 10:1 ratio). Thus, here, punitive damages will push the amount in controversy (excluding potential reductions Nissan may be able to achieve through its defenses at trial) to approximately $211,749.75 ($136,338.07 + $75,411.68= $283,309.81), well over the $75,000.00 threshold.

36. In sum, based on Plaintiff's own allegations, the available information reveals that the amount in controversy in this case will exceed the $75,000 threshold necessary for diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). Excluding potential reductions Nissan may be able to achieve thorugh its defenses, the total sale price was $37,705.84 (*see* Salas Decl., ¶¶ 12–16), the maximum civil penalty would therefore be $113,117.52 (*id.,* ¶ 14), and even the lowest attorney's fee awarded to Plaintiff's counsel has been $23,220.55 (while their average request in similar breach of warranty cases exceeds $75,000). Adding all these figures together—even when excluding punitive damages—shows that Plaintiff could recover a total of $136,338.07, well over the statutory threshold. *See Korn*, 536 F. Supp. 2d at 1205 ("The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe.").

37. This conclusion is unaffected by the possibility of reductions to Plaintiff's damages Nissan may be able to achieve through its defenses. The Song-Beverly Act excludes from its restitution remedy any "'nonmanufacturer items installed by a dealer' … [s]uch items are not part of the 'new motor vehicle' price and the manufacturer is not required to reimburse the buyer for their cost." *Rivera v. Ford Motor Co.*, No. CV 18-07798 DSF (PJWx), 2020 U.S. Dist. LEXIS 60566, at *12 (C.D. Cal. Feb. 10, 2020) (quoting Cal. Civ. Code § 1793.2(d)(2)(B)). Here, the broadest interpretation of this principle and its corollaries means Nissan may be entitled to the following deductions from the purchase price: the cost of theft deterrent devices ($199.00), and the cost of a vehicle service contract ($3,500.00). Collectively, these deductions total $3,699.00, and result in an adjusted purchase price of $34,006.84 ($37,705.84- $3,699.00 = $34,006.84).

38. Additionally, Nissan may be entitled to a mileage offset deduction. The statutory repurchase amount under the Song-Beverly Act may be "reduced by … that amount directly attributable to use by the buyer prior to the discovery of the nonconformity." *See* Cal. Civ. Code § 1793.2(d)(2)(C). This deduction is calculated

1  by taking the number of miles driven before the first repair attempt divided by
2  120,000, which results in an "offset multiplier." *See Canesco*, 570 F. Supp. 3d at 898
3  (illustrating mileage offset calculation). The product of the offset multiplier and the
4  vehicle's adjusted purchase price is the mileage offset amount. *See id.*; *see also*
5  *Wickstrum v. FCA USA LLC*, No.: 3:20-cv-00336-L-JLB, 2021 WL 532257, at *1–2,
6  n.2 (S.D. Cal. Feb. 12, 2021).

7  39.  Here, Plaintiff bought her 2021 Nissan Kicks with 9 miles on the
8  odometer on April 16, 2021. *See* Salas Decl., ¶¶ 11, 17. Plaintiff alleges that she first
9  presented her vehicle for braking-related repairs on April 21 2023 at 18,643 miles,
10 reporting that her vehicle's "forward collision warning light would illuminate despite
11 there being no obstructions in its vicinity as well as the subject vehicle braking on its
12 own." *See* Plaintiff's Complaint at ¶ 15.  Plaintiff, thus, drove the vehicle for 18,634
13 miles prior to the discovery of the alleged nonconformity (18,643 – 9 = 18,634).
14 Dividing this mileage figure by 120,000 generates the offset multiplier, and
15 multiplying the offset multiplier by the adjusted purchase price results in a mileage
16 offset of $5,280.70 (18,634÷ 120,000 x $34,006.84= $5,280.70). *See* Salas Decl., ¶
17 17; see also Complaint, ¶ 15.

18 40.  Consequently, the purchase price, less potential reductions Nissan may
19 be able to achieve though its defenses, is $28,726.14 ($37,705.84- $199.00 -
20 $3,500.00 - $5,280.70) = $28,726.14). *Id.* The amount in controversy with a reduced
21 purchase price, including attorney's fees, and even before considering incidental and
22 consequential damages, and prejudgment interest or punitive damages, is therefore
23 $109,398.97 ($28,726.14+ (2)x $28,726.14) plus $23,220.55 in estimated attorney's
24 fees totals $109,398.97). *See* Salas Decl., ¶¶ 17–18. Thus, potential reductions to
25 Plaintiff's recovery Nissan may be able to achieve through its defenses (including the
26 $5,280.70 mileage offset) will not materially affect the conclusion that the amount in
27 controversy is met. *See* Salas Decl., ¶¶ 17–18 (providing a detailed explanation of
28 potential damages reductions, including the mileage offset calculation).

41.     Moreover, minor inaccuracies in the potential reductions Nissan may be able to achieve through its defenses (including the mileage offset calculation) cannot defeat jurisdiction because they would not reduce the amount in controversy so substantially that it would fall below the jurisdictional minimum. *Schneider v. Ford Motor Co.*, 756 F. App'x 699, 702 (9th Cir. 2018) (reversing district court for improper remand under this circumstance). For example, the mileage offset need not be included in the amount in controversy as this "offset is not automatic. [Defendant] would need to affirmatively (and successfully) raise it at trial…. Therefore, it is appropriate to rely on the unreduced amount paid or payable [plus maximum civil penalties] to determine the amount in controversy" to calculate the amount in controversy (that total here is $156,089.28). *Wickstrum*, 2021 WL 532257, at *2; *Carillo v. FCA USA, LLC*, 546 F. Supp. 3d 995, 1002, n.7 (C.D. Cal. 2021) ("[C]ourts in this district routinely calculate the amount of restitution a plaintiff may be entitled to recover under the Song-Beverly Act without applying any reduction to account for manufacturers' rebates.") (internal cites omitted); *Rahman*, 2021 WL 2285102, *3 ("Defendant is not required to definitively prove the entitlement to an offset to remove the case; rather, it is only required to prove by a preponderance of the evidence that the amount in controversy exceeds $75,000.") (citing *Dart Cherokee Basin*, 574 U.S. at 89, *Arias*, 936 F.3d at 927); *In Re: Ford Motor Co. DPS6 Powershift Transmission Products Liability Litig.*, No. 18-ML-02814 (AB), 2018 WL 5905942, at *4 (C.D. Cal. Sep. 10, 2018) (The "amount in controversy is established by what the plaintiff demands, not by any reductions that a defendant might achieve through its defenses.").

42.     A diverse defendant is entitled to have its case heard in federal court. *See Guaranty Trust Co. v. York*, 326 U.S. 99 (1945) ("Diversity jurisdiction is founded on assurance to non-resident litigants of courts free from susceptibility to potential local bias."); *Young v. Ford Motor Co.*, No. 1:07-cv-00297-LJO-SMS, 2007 WL 1847663 (E.D. Cal. June 27, 2007) ("A defendant's right to remove a case that could be heard

in federal court is at least as important as the plaintiff's right to the forum of his choice"; internal cite omitted). Accordingly, Congress and federal appellate courts have taken steps to combat gamesmanship and improper reliance on a purported presumption against removal aimed at depriving a nonresident defendant of its right to have its case heard in federal court. *See, e.g., Academy of Country Music v. Continental Casualty Co.*, 991 F.3d 1059 (9th Cir. 2021) (reversing remand and holding notice of removal need not prove subject matter jurisdiction; allowing right of appeal when remand based not on a colorable § 1447(c) ground); *Destfino v. Reiswig*, 630 F.3d 952 (9th Cir. 2011) (allowing removal by later-served defendants, noting the Supreme Court has "relaxed its presumption against removal"); *see generally*, Federal Courts Jurisdiction and Venue Clarification Act of 2011, Public Law 112–63 (Dec. 7, 2011) (amending removal statute to allow removal more than one year after commencement of the action where plaintiff hides the actual amount in controversy to prevent removal, a principle that also applies to re-removal).

43.  Should the Court require further proof of the amount in controversy, Nissan respectfully requests the ability to conduct jurisdictional discovery by interrogatories or depositions to support that the amount in controversy is satisfied pursuant to 28 U.S.C. § 1332.

**DEMAND FOR JURY TRIAL**

Defendant Nissan North America, Inc., demands a trial by jury on all issues that may be tried to a jury.

Dated: June 7, 2023

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Rodrigo E. Salas*
  Amir Nassihi
  Rodrigo E. Salas

Attorneys for Defendant
NISSAN NORTH AMERICA, INC.